**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:24-cv-00176

DALLAS RATCLIFF,

    Plaintiff,

v.

CREATION GARDENS, INC. d/b/a WHAT CHEFS WANT, a Kentucky Corporation,

    Defendant.

_____

**COMPLAINT AND JURY DEMAND**
_____

Defendant Creation Gardens, Inc. d/b/a What Chefs Want ("WCW") employed Plaintiff Dallas Ratcliff as a Meat Cutter for over one year. Despite Mr. Ratcliff's satisfactory or better performance, WCW abruptly terminated him on August 17, 2022. This occurred less than six weeks after Mr. Ratcliff disclosed that he had been diagnosed with a type of cancer and would need to undergo surgery in the immediate future.

Mr. Ratcliff asserts claims against WCW of disability discrimination and retaliation under the Americans with Disabilities Act of 1990 ("ADA"), as amended, 42 U.S.C. § 12101, *et seq.*, age discrimination under the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq.*, and interference with his right to take leave under the Family Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601, *et seq.*

For Mr. Ratcliff's Complaint, he alleges:

## PARTIES

1. Plaintiff Dallas Ratcliff is a resident of the State of Colorado.

2. WCW is a Kentucky corporation authorized to do business in Colorado.

3. WCW's principal address is 2055 Nelson Miller Parkway in Louisville, Kentucky 40223.

4. WCW's registered agent in Colorado is located at 7700 E. Arapahoe Road, Suite 220 in Centennial, Colorado 80112.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4), in that this action arises under federal law, specifically the ADA, ADEA, and FMLA.

6. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) as the unlawful employment practices alleged herein were committed within this judicial district.

7. At all relevant times, Defendant WCW was covered by the definition of "employer" set forth in 42 U.S.C. § 12111(5)(A) of the ADA.

8. At all relevant times, Defendant WCW was covered by the definition of "employer" set forth in 29 U.S.C. § 630(b) of the ADEA.

9. At all relevant times, Defendant WCW was covered by the definition of "employer" set forth in 29 U.S.C. § 2611(4) of the FMLA.

10. The procedural prerequisites for the filing of this suit have been met. Plaintiff filed a charge of age and disability discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") and has received a Notice of Right to Sue letter.

## SPECIFIC ALLEGATIONS

**Mr. Ratcliff was a committed employee of WCW.**

11.     WCW is a wholesale food supplier and distributor that sells produce, meats, seafood, gourmet food items, dairy, and other staples to chefs and restaurants.

12.     WCW hired Mr. Ratcliff as a Meat Cutter in June 2021.

13.     In this role, Mr. Ratcliff helped the company in the final phase of constructing its new store and warehouse at 5151 Bannock Street in Denver.

14.     After the store and warehouse opened, Mr. Ratcliff transitioned to specialty meat cutting and managing the Denver facility's inventory.

15.     Throughout Mr. Ratcliff's employment with WCW, his performance was satisfactory or better.

16.     Mr. Ratcliff had an excellent rapport with his customers, his supervisors, and his co-workers.

17.     Through the majority of his employment with WCW, Mr. Ratcliff worked upwards of 20 hours of overtime per week and rarely took time off due to illness or otherwise.

18.     Mr. Ratcliff went well beyond his listed duties, becoming proficient in the company's client database software, DB Client, completing FDA-required compliance reports and paperwork, and performing operational inspections.

19.     Mr. Ratcliff even learned how to fix routine problems with the Variovac packaging machine, which saved the company fees each time Mr. Ratcliff addressed the issue instead of WCW calling out a highly specialized technician to service the machine.

**Mr. Ratcliff learned that he had a tumor and disclosed this to WCW.**

20. In late June 2022, Mr. Ratcliff was diagnosed with a nerve tumor, which was intermittently causing him significant pain and fatigue.

21. Several of Mr. Ratcliff's medical providers recommended that he undergo surgery to remove the tumor.

22. Mr. Ratcliff's condition was a physical impairment that substantially impacted one or more major life activities, including but not limited to: walking, standing, lifting, working, and the operation of a major bodily function, i.e., normal cell growth.

23. On July 10, 2022, Mr. Ratcliff disclosed his diagnosis to his supervisor, Proteins Manager Gustavo Oropeza, Jr., in a voicemail.

24. In the voicemail, Mr. Ratcliff said that he had been diagnosed with cancer and that he would need to have surgery in about a month.

25. Mr. Oropeza did not return Mr. Ratcliff's call.

26. On Tuesday, July 12, 2022, Mr. Ratcliff had an in-person discussion with WCW's Denver Human Resources Director, Lisa Schubauer.

27. During that discussion, Mr. Ratcliff disclosed to Ms. Schubauer that his doctors had found a baseball-sized tumor in his groin that they recommended be removed in about a month.

28. Mr. Ratcliff told both Ms. Schubauer and Mr. Oropeza that he would need to take some time off following the surgery.

29. Mr. Ratcliff did not request a specific amount of time, but said that he had researched the procedure and learned that it would likely require a three-month recovery.

30. Mr. Ratcliff joked, however, that he could probably return after one month.

31. On July 14, 2022, Ms. Schubauer provided Mr. Ratcliff with a Notice of Eligibility & Rights and Responsibilities under the FMLA in which she confirmed that he was eligible for FMLA leave.

32. Ms. Schubauer also gave Mr. Ratcliff a Certification of Health Care Provider to give to his doctor to complete.

33. Mr. Ratcliff did not return a completed copy of the Certification of Health Care Provider prior to his termination.

34. Despite WCW's knowledge that Mr. Ratcliff was taking time off to attend doctor's appointments for his medical condition, the company never followed up regarding providing him with intermittent FMLA leave for these appointments.

### WCW's change in treatment of Mr. Ratcliff following his disclosure of his medical condition was swift and retaliatory.

35. Within a week or two of Mr. Ratcliff's disclosure to WCW, the company delegated Mr. Ratcliff's inventory responsibilities to a Seafood Cutter in his 40s with less inventory experience even though Mr. Ratcliff had been successfully performing those duties for a year without incident.

36. At the time, Mr. Ratcliff was 51 years old.

37. Mr. Ratcliff was born in 1970; as of the date of this Complaint, he is 53 years old.

38. Next, WCW brought in another Meat Cutter, Sam Bear, who lacked specialty cutting experience and was in his mid-30s.

39. Mr. Bear was hired shortly after Mr. Ratcliff overheard two WCW managers discussing the state of operations in the Meat Cutting department in Denver.

5

40. During this discussion, Mr. Ratcliff overheard one manager suggest that "You need to look for someone in their 30s with meat cutting and inventory experience."

41. On August 17, 2022, Mr. Ratcliff reminded Mr. Oropeza that Mr. Ratcliff had an appointment with his oncologist on August 18 and would need to leave his shift early.

42. Just a few hours later on August 17, Mr. Oropeza and the Receiving Manager asked to meet with Mr. Ratcliff.

43. During the meeting, Mr. Oropeza told Mr. Ratcliff that he was being terminated.

44. Mr. Oropeza initially explained that the reason was because the company wanted to "go in a different direction."

45. When Mr. Ratcliff asked for the "real" reason, Mr. Oropeza said that Mr. Ratcliff's performance lately had "dwindled."

46. Although it was true that Mr. Ratcliff had been working more slowly since his diagnosis due to the severe pain and fatigue caused by his condition, Mr. Ratcliff always completed his tasks.

47. During his employment with WCW, Mr. Ratcliff was never disciplined or otherwise told that his job was in jeopardy.

48. From late June 2022 through August 17, 2022, Mr. Ratcliff had about eight doctor's appointments during the day that took him away from work for an hour or two and one full-day absence, all of which were related to Mr. Ratcliff's disability.

49. With the exception of an absence on June 25, 2022, which was not a date that Mr. Ratcliff expected to be absent from work, Mr. Ratcliff communicated each of these anticipated

periods off to his two co-workers in the Meat Cutting department, Mr. Bear and Paul Quintana, and Mr. Oropeza with at least two days' notice.

50. Mr. Oropeza orally acknowledged and approved each request.

51. He would then make a note on a physical calendar at the worksite to indicate Mr. Ratcliff's time off.

52. Mr. Ratcliff was also absent on August 9 and 10, 2022 due to a major security breach of his personal information, including his phone, computer, bank accounts, and Ring home security system.

53. Because of this hack, his phone was locked and he was unable to retrieve any numbers.

54. As a result, Mr. Ratcliff was unable to contact Mr. Oropeza or anyone else from work to call off work on Tuesday, August 9.

55. Mr. Ratcliff did eventually leave a voicemail for WCW's corporate office late in the afternoon on August 9 notifying the company why he had been absent that day and that he would be out the following day, August 10.

56. After Mr. Ratcliff's termination, Mr. Bear took over some of Mr. Ratcliff's former duties.

57. Based on information and belief and in anticipation of future discovery, WCW hired Mr. Bear to replace Mr. Ratcliff.

58. Mr. Ratcliff filed a charge of disability and age discrimination and retaliation jointly with the Colorado Civil Rights Division and EEOC against WCW on January 16, 2023.

59. The EEOC issued a Notice of Right to Sue for charge 32A-2023-00378 on October 23, 2023.

## STATEMENT OF CLAIMS

### FIRST CLAIM FOR RELIEF
(Disability Discrimination in Violation of the ADA)

60. The foregoing allegations are realleged and incorporated herein by reference.

61. Mr. Ratcliff had a physical impairment that substantially limited one or more major life activities.

62. Mr. Ratcliff was able and qualified to perform his essential job functions with or without a reasonable accommodation.

63. It follows that, during his employment with WCW, Mr. Ratcliff was a qualified individual with a disability under the ADA.

64. WCW discriminated against Mr. Ratcliff because of his actual, perceived, or record of a disability by, among other things: delegating his inventory responsibilities to another employee; faulting him for having a purportedly "dwindling" performance when this change in his performance was related to his disability; faulting him for being absent from work when these absences were largely related to the medical treatment for his disability; and terminating him.

65. WCW's actions toward Mr. Ratcliff were done knowingly and intentionally or with reckless disregard of his federally protected rights.

66. As a direct and proximate result of WCW's actions, Plaintiff has suffered and continues to suffer damages, including lost wages and benefits, diminished reputation and other pecuniary losses, and emotional pain and suffering, mental anguish, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

## SECOND CLAIM FOR RELIEF
(Retaliation in Violation of the ADA)

67. The foregoing allegations are realleged and incorporated herein by reference.

68. Mr. Ratcliff participated in statutorily protected activity by requesting a reasonable accommodation of his disability, i.e., intermittent time off to attend medical appointments and a continuous block of time off for surgery and recovery.

69. Following Mr. Ratcliff's protected activity, WCW retaliated against him by, among other things: delegating his inventory responsibilities to another employee; faulting him for having a purportedly "dwindling" performance when this change in his performance was related to his disability; faulting him for being absent from work when these absences were largely related to the medical treatment for his disability; and terminating him.

70. WCW's actions toward Mr. Ratcliff were done knowingly and intentionally or with reckless disregard of his federally protected rights.

71. As a direct and proximate result of WCW's conduct, Mr. Ratcliff has suffered and continues to suffer damages, including lost wages and benefits, diminished reputation and other pecuniary losses, and emotional pain and suffering, mental anguish, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

## THIRD CLAIM FOR RELIEF
(Age Discrimination in Violation of the ADEA)

72. The foregoing allegations are realleged and incorporated herein by reference.

73. By virtue of his age, Mr. Ratcliff belongs to a protected group under the ADEA.

74. WCW subjected Mr. Ratcliff to less favorable terms and conditions of his employment based on age. This treatment included, but is not limited to: delegating Mr. Ratcliff's inventory

duties to a younger less experienced employee; expressing an explicit preference to hire a Meat Cutter in their 30s; faulting Mr. Ratcliff for "dwindling" performance after his working pace slowed down due to pain and fatigue; terminating Mr. Ratcliff; and replacing him in full or part with a younger employee.

75. The discriminatory actions of WCW were done knowingly and willfully, justifying an award of liquidated damages.

76. As a direct and proximate result of WCW's actions, Mr. Ratcliff has suffered damages, including lost wage and benefits, loss of career progression, attorney fees and costs, and other pecuniary losses.

**FOURTH CLAIM FOR RELIEF**
(Interference with FMLA Rights in Violation of the FMLA)

77. The foregoing allegations are realleged and incorporated herein by reference.

78. Mr. Ratcliff was entitled to take intermittent and block FMLA leave.

79. Defendant's conduct interfered with Mr. Ratcliff's rights under the FMLA, including the right to take intermittent and block FMLA leave.

80. WCW's actions were related to Mr. Ratcliff's exercise or attempted exercise of his right to take leave under the FMLA.

81. As a result of Defendant's violation of the FMLA, Mr. Ratcliff has suffered damages, including lost pay and future wages, employment benefits, and other compensation.

82. In addition to his actual damages, Mr. Ratcliff is entitled to recover liquidated damages in an amount equal to his actual damages, as well as reasonable attorney fees, interest, and costs pursuant to 29 U.S.C. § 2617(a)(1)(A) and § 2617(a)(3).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Dallas Ratcliff respectfully requests that this Court enter judgment in his favor and against Defendant Creation Gardens, Inc. d/b/a What Chefs Want and order the following relief as allowed by law:

A. Compensatory damages, including but not limited to those for emotional distress, inconvenience, mental anguish, and loss of enjoyment of life;

B. Back pay and benefits;

C. Reinstatement or front pay and benefits;

D. Injunctive and/or declaratory relief;

E. Liquidated damages;

F. Punitive damages;

G. Attorney fees and costs of the action, including expert witness fees, as appropriate;

H. Pre-judgment and post-judgment interest at the highest lawful rate; and

I. Such further relief as justice allows.

**PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE.**

Respectfully submitted January 19, 2024.

          By:    LOWREY PARADY LEBSACK, LLC

          s/Ariel DeFazio
          1490 Lafayette Street, Suite 304
          Denver, CO 80218
          Telephone: (303) 593-2595
          FAX: (303) 502-9119
          E-mail: ariel@lowrey-parady.com
          Attorney for Plaintiff Dallas Ratcliff

Plaintiff's Address:
2737 W. Cornell Avenue
Denver, CO 80236

## CERTIFICATION OF GOOD STANDING

I hereby certify that I am a member in good standing of the bar of this Court.

          By:    LOWREY PARADY LEBSACK, LLC

          s/Ariel B. DeFazio
          1490 Lafayette Street, Suite 304
          Denver, CO 80218
          Telephone: (303) 593-2595
          FAX: (303) 502-9119
          E-mail: ariel@lowrey-parady.com
          Attorney for Plaintiff Dallas Ratcliff